# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING LLC, | **Case No. 6:18-cv-00113-JRG-JDL** |
| Plaintiff, | |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD, ET AL., | |
| Defendants. | |

**REALTIME'S OPPOSITION TO SAMSUNG'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................................... 1

II.   ARGUMENT................................................................................................................. 2

    A.   The Fallon Patents Are Not Patent Ineligible Under Section 101 ............................. 2

        1.   *Alice* Step 1 ...................................................................................................... 2

        2.   *Alice* Step 2 ...................................................................................................... 5

        3.   Samsung Fails to Analyze Each Claim Separately............................................. 7

    B.   The Amended Complaint Adequately Pleads Infringement of the '777 and '298
        Patents.......................................................................................................................... 9

    C.   Realtime's Allegations Regarding Induced and Contributory Infringement Are
        Properly Limited to Conduct Occurring After Samsung Gained Knowledge of the
        Patents.......................................................................................................................... 9

    D.   The Amended Complaint Sufficiently Pleads Contributory Infringement................. 10

III.  CONCLUSION.............................................................................................................. 14

TABLE OF AUTHORITIES

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..............................................................................7

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)..............................................................................8

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)..............................................................................6

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016).........................................................................6, 8

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)..............................................................................7

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
  No. 6:13-CV-507, 2015 WL 10936121 (E.D. Tex. Oct. 30, 2015) .......................11

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)..............................................................................6

*Corydoras Techs., LLC v. Apple Inc.*,
  No. 2:16-CV-00538-JRG, 2016 WL 9242435 (E.D. Tex. Nov. 23, 2016)..............9

*Crypto Research, LLC v. Assa Abloy, Inc.*,
  236 F. Supp. 3d 671 (E.D.N.Y. 2017) ..................................................................12

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014).........................................................................4, 6

*Driessen v. Sony Music Entm't*,
  No. 2:09-CV-0140-CW, 2013 WL 4501063 (D. Utah Aug. 22, 2013) ..................12

*Estee Lauder Inc. v. L'Oreal, S.A.*,
  129 F.3d 588 (Fed. Cir. 1997)................................................................................6

*EZ STAK, LLC v. Dejana Truck & Util. Equip. Co.*, LLC,
  No. 17 C 8742, 2018 WL 2933603 (N.D. Ill. June 12, 2018) .........................11, 13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018).........................................................................3, 6

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012).......................................................................12, 13

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
  No. CV 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016)..........................7

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)..............................................................................8

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
  1 F. Supp. 3d 1020 (C.D. Cal. 2014) ...................................................................13

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018) .................................................................................... 13, 14

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
  311 F. Supp. 3d 1078 (D. Minn. 2018) ............................................................................ 13

*Orion Energy Sys. Inc. v. Energy Bank Inc.*,
  2017 WL 4773301 (E.D. Wis. Oct. 23, 2017) ................................................................... 7

*Puget Bioventures, LLC v. Biomet Orthopedics LLC*,
  No. 3:10-CV-465 JD, 2018 WL 3223152 (N.D. Ind. July 2, 2018) ....................................... 11

*Realtime Data LLC v. Actian Corp.*,
  2016 WL 4054914 (E.D. Tex. July 28, 2016) .................................................................... 4

*Realtime Data LLC v. Rackspace US, Inc.*,
  2017 WL 2590195 (E.D. Tex. June 14, 2017) .................................................................... 4

*Rhodes Pharm. L.P. v. Indivior, Inc.*,
  No. CV 16-1308, 2018 WL 326405 (D. Del. Jan. 8, 2018) ................................................. 11

*Tierra Intelectual Borinquen, Inc. v. Toshiba Am. Info. Sys., Inc.*,
  No. 2:13-CV-047-JRG, 2014 WL 605431 (E.D. Tex. Feb. 14, 2014)) ................................. 11

*Twombly* and *Iqbal*."); *Conair Corp. v. Jarden Corp.*,
  No. 13-CV-6702 AJN, 2014 WL 3955172 (S.D.N.Y. Aug. 12, 2014) ............................. 11, 12

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
  No. 2:16-CV-989-JRG, 2017 WL 3721064 (E.D. Tex. May 15, 2017) ............................ 10, 14

## I.      INTRODUCTION

Each of Samsung's various arguments regarding the purported insufficiencies of the Amended Complaint (Dkt. No. 26) fail. First, the Fallon Patents, including the '046 patent, are not ineligible under § 101. The patents provide particular technological solutions to technological problems specific to the field of digital-data compression. Under controlling Federal Circuit precedent, they are not abstract. Furthermore, the claims are necessarily rooted in computer technology and provide a technological solution to problems specifically arising in the realm of compression of digital computer data. The mere fact that some individual claim limitations may be performed using known components does not render them ineligible, as Samsung contends. Samsung's assertions under § 101 amount to nothing more than attorney argument, which cannot support invalidating 5 patents and numerous patent claims. Moreover, questions regarding the eligibility of the Fallon Patents raise factual issues which are improper for resolution at the pleading stage.

Samsung's other arguments regarding pleading sufficiency also fail. As explained in detail in Realtime's opposition to Cisco's motion to dismiss (the "*Cisco* motion," available at Samsung's Exhibit E, Dkt. No. 30-5), the Amended Complaint has sufficiently plead infringement of the '777 and '298 patents to put Samsung on notice of what it must defend. With respect to the indirect infringement claims, they are properly limited to Samsung's conduct occurring after it gained knowledge of the asserted patents, which occurred at least as early as the date this action was filed. And finally, the contributory infringement claims sufficiently plead that the accused products have no substantial non-infringing uses. Contrary to Samsung's assertions, there is no requirement that Realtime explain "how" they have no substantial non-infringing uses. Indeed, to impose such a requirement would essentially require Realtime to prove a negative. But recent Federal Circuit decisions confirm that Realtime's allegations are

more than sufficient. To the extent Samsung disputes these allegations, this is a factual inquiry not appropriate for resolution on a motion to dismiss. Samsung's motion should be denied in its entirety.

## II.   ARGUMENT

### A.   The Fallon Patents Are Not Patent Ineligible Under Section 101

As discussed in detail in Realtime's opposition to the *Cisco* motion, the Fallon Patents claim digital compression inventions aimed at solving problems unique to digital computer data. As Samsung relies on the briefing from *Cisco* in its motion to dismiss, Realtime incorporates the relevant sections from its opposition and sur-reply to the *Cisco* motion (available at Dkt. Nos. 31-5 and 31-7) herein.

### 1.   *Alice* Step 1

As noted by Samsung, the '046 patent is not asserted in *Cisco*. However, this patent is related to the rest of the Fallon Patents and shares substantially the same specification. Realtime's arguments with respect to the Fallon Patents in *Cisco* thus apply equally to the '046 patent. More specifically, the claimed invention of the '046 patent is not directed to an abstract idea, but rather provides particular technological solutions to technological problems specific to the field of digital-data compression. The patents themselves state they are directed to problems unique to the realm of digital data, a form of computer data "not easily recognizable to humans in native form." (*See, e.g.*, '046 patent at 2:22–25.). In this realm, the patents describe using a combination of particular steps or structural computer components to help improve detection and exploitation of redundancies, for example, in the incoming strings of computer "1s" and "0s."

And the asserted claims are not just directed to digital data compression in *general*, but a *particularized* subset of novel digital data compression, which is directed to improving the

2

capacity of a computer system to store more data or to transfer data more efficiently across computer systems. Moreover, the asserted claims require even more specific steps and components than those held eligible by the Federal Circuit *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018). These include: (i) the use of "a ***plurality*** of ***different***" compression algorithms or techniques; (ii) determining "data parameters" or "attributes" of a digital data block; (iii) "select[ing]" specific techniques based upon that determination relating to "a throughput of a communication channel," or a digital data "access profile," (iv) requiring the selected techniques to be "asymmetric," and other novel elements. (*See, e.g.*, '046 patent claims 1 & 34.)

Like the inventions in *Finjan*, *DDR*, *Enfish*, *Core Wireless*, and *Visual Memory* (discussed in detail in Realtime's opposition to the *Cisco* motion at pp. 7–9), the patents teach specific improvements to the function of the computer parts themselves, such as computer memory and computer-data storage and retrieval mechanisms. For example, the patents describe problems in the conventional arts, including "limitations in the size of the data"; "file systems [that] are not able to randomly access compressed data in an efficient manner"; "slower access times"; and "a compromise between efficient data storage, access speed, and addressable data space." ('046 patent at 6:31–55.) These are technological problems, not human problems.

The Fallon Patents expressly confirm that "[t]hese and other limitations within the current art are solved with the present invention." (*Id.* at 7:47-48.) For instance, the claims recite novel technological systems in digital data compression utilizing two or more compressors (e.g., "asymmetric" compressor[1]), and the systems configured to select a compressor based on a parameter of a data block / throughput of a communication channel. (*See, e.g., id.* at 7:52–8:53.)

---

[1] In "[a]n asymmetrical data compression algorithm[,] . . . the execution time for the compression and decompression routines differ significantly." ('046 patent at 9:64–67.)

The patents describe that "the overall throughput (bandwidth) . . . is one factor considered by the controller 11 in deciding whether to use an asymmetrical or symmetrical compression" (*id.* at 11:29–34), and recognized that "utiliz[ing] an asymmetrical algorithm ... [may] provide an increase in the overall system performance as compared the performance that would be obtained using a symmetrical algorithm" (*id.* at 12:2–7). These claimed solutions are not abstract. They are necessarily rooted in computer technology and aimed at solving limitations in then-existing digital-data compression systems,[2] i.e., technological solutions to technological problems.

Realtime's claims present a clearer case of eligibility than those held eligible by the Federal Circuit in other cases. For example, in *DDR*, after analyzing the invention, which were about "look and feel" of websites, the court held that while the "claims do not recite an invention as technologically complex as an improved, particularized method of ***digital data compression***," they were nonetheless eligible. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (emphasis added). Contrary to Samsung's assertions that the '046 patent merely tries to limit the claims to a particular technological environment, the claims present precisely the type of invention the Federal Circuit recognized as unquestionably patent eligible— particularized systems and methods of digital-data compression.[3]

---

[2] The patents, properly interpreted, are limited to compression of digital data. For example, the defendants in *Realtime Data LLC v. Actian Corp. et al.* agreed that "compress"—a term present in all claims of the asserted Fallon Patents—means "represent data with fewer bits," indicating digital data compression (a "bit" is a unit of digital data). 2016 WL 4054914, at *18 (E.D. Tex. July 28, 2016); *see also Realtime Data LLC v. Rackspace US, Inc.*, 2017 WL 2590195, *8 (E.D. Tex. June 14, 2017) (construing "compress" as "represent data with fewer bits"). As another example, "data block" was construed for other Realtime patents to mean "a single unit of data, which may range in size from individual bits through complete files or collection of multiple files." *Id.* at *18. Indeed, any construction of the term that does not limit the term to digital data would be contrary to the plain and ordinary meaning.

[3] As further detailed in Realtime's opposition to the *Cisco* motion (at pp. 11–13), this Court has repeatedly held that the subject matter of the asserted patents is patent-eligible despite several prior challenges.

### 2.   *Alice* Step 2

As in *Bascom* and *Amdocs* (discussed in detail in Realtime's opposition to the *Cisco* motion at p. 19), the elements of the claims, when properly examined as an ordered combination, recite more than well-understood, routine, conventional activities. The inventive concept is readily apparent from the patent specifications, which describe the problems in the prior art and explain how the claimed inventions solve these problems.

The Fallon Patents, including the '046 patent, address the prior-art problems, including: "compromise between efficient data storage, access speed, and addressable data space," "limitations in the size of the data required to both represent and process an individual data block address," "file systems [that] are not able to randomly access compressed data in an efficient manner," "substantial disk fragmentation and slower access times." (*See* '046 patent at 6:31–7:48.) To solve these problems, the asserted patents teach unconventional combinations of elements, such as (a) "asymmetric compressors"; (b) "plurality of compressors"; (c) determining parameter of "data block"; (d) selecting compressor based on the parameter and/or "throughput"; (e) providing compressed data blocks; and (f) "communication channel" / determining a "throughput" of a communication channel.

As reflected in the patent claims and specifications, the claimed inventions here do not merely recite well-understood, routine, conventional activities but, instead, are necessarily rooted in computer technology and provide a technological solution that improves computer functionality and overcome a problem specifically arising in the realm of compression of digital computer data. The patents amount to "significantly more" than simply claiming an abstract idea and are therefore patent-eligible. The asserted claims present an even clearer case of patent-

eligibility than claims expressly approved by the Federal Circuit. *See, e,g.*, *DDR*, 773 F.3d at 1259; *Finjan*, 879 F.3d at 1305.

In arguing that the claims lack inventive concept, Samsung pursues the same flawed analysis rejected by the Federal Circuit in *Bascom* and *Amdocs* and the Supreme Court. Samsung's arguments isolate individual claim elements to argue that they are merely "general-purpose computer parts." (Mot. at 6.) But the fact that some of the individual claim limitations may be performed using known components does not render them ineligible. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."); *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) ("That the invention ran on a general-purpose computer did not doom the claims.").

Samsung's assertions here are based on sheer attorney argument, which is insufficient to satisfy its burden on a motion to dismiss. *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("[A]rguments of counsel cannot take the place of evidence lacking in the record."). Furthermore, Samsung fails to discuss the entire claim limitations as an ordered combination. A proper § 101 analysis shows that the claims recite specific, discrete implementations of digital data compression, and the recited claim elements "operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016). Indeed, the Court "must take the specification's statements about the purported invention to be true," and is "not free to accept [Samsung's] contrary attorney argument" that the claims are directed to conventional means. *MAZ Encryption Techs. LLC v. Blackberry Corp.*, No. CV 13-304-LPS, 2016 WL

5661981, at *5 (D. Del. Sept. 29, 2016). At the very least, this is a factual question that precludes dismissal.

Moreover, as set forth in more detail in Realtime's sur-reply (at pp. 5–8) to Cisco's motion to dismiss (*see* Dkt. No. 31-7), the intrinsic record of the patents confirms that the claims recite unconventional solutions to technological problems. *See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is *a question of fact* … [which] must be proven by *clear and convincing evidence*." (emphasis added)); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ("[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . *only when* there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." (emphasis added)); *see* Dkt. No. 31-7 (Realtime's Sur-Reply) at 5–8.

### 3.   Samsung Fails to Analyze Each Claim Separately[4]

Samsung's motion should also be denied because it provides no clear and convincing evidence that all of the asserted claims of the '046 patent (totaling 41 claims), as well as the other 4 Fallon patents, are ineligible. Samsung merely provides conclusory attorney arguments asserting that other claims "recite minor variations" aside from claim 40 do not provide "additional technological substance." (Mot. at 5–6.) These arguments fail for the same reason as set forth above, including because Samsung ignores the actual combination of limitations set

---

[4] Contrary to Samsung's suggestions (Mot. at 4 n.3), the fact that the complaint does not provide infringement allegations for each asserted claim does not relieve Samsung of its duty to analyze the claims separately. There is no requirement that the complaint identify all the asserted claims in the complaint or explain how each element of each asserted claim is infringed. *See, e.g.*, *Orion Energy Sys. Inc. v. Energy Bank Inc.*, 2017 WL 4773301, *2 (E.D. Wis. Oct. 23, 2017) ("[A] party need not plead facts supporting infringement allegations for each asserted claim … Requiring plaintiffs to allege infringement of all asserted claims would be contrary to the spirit of Rules 1 and 8 of the Federal Rules of Civil Procedure."). On the other hand, Samsung is required to show that each claim is ineligible under § 101 in order to obtain dismissal.

forth in the claims. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Bascom*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."). Samsung has not and cannot show that all 41 patent claims (or the other numerous claims in the 4 other Fallon patents) are ineligible under § 101 under any standard, let alone the heightened standards on a motion to dismiss.

Moreover, none of the claim elements of the Fallon Patents, including the '046 patent, have ever been construed by any court. For example, any reasonable interpretation of the claim language would demonstrate that the claims are limited to digital data compression and cannot be performed with pen and paper or in human mind (*see supra* fn. 2). Accordingly, claim construction would further support the eligibility of the patents.

Further, "patent eligibility under § 101 presents an issue of law . . . contain[ing] underlying factual issues." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013) In order to rule for Samsung, the Court would have to first resolve several disputed issues of material fact, including: (a) the core aspects of the patented inventions; (b) whether the claimed inventions can be performed with pencil and paper; (c) whether the claimed inventions are merely generic or standard implementations of abstract ideas; and (d) whether all combinations of claim limitations are well understood, routine, or conventional. There will likely be subsidiary issues of fact relevant to each issue as well. Viewing these and other facts in a light most favorable to Realtime precludes dismissal at this stage.

**B.     The Amended Complaint Adequately Pleads Infringement of the '777
and '298 Patents**

Realtime refers to and incorporates Section IV of its opposition and the sur-reply to the

*Cisco* motion (Dkt. Nos. 31-5 at pp. 23–29 and 31-7). The differences between the '462 patent

asserted in *Cisco* and the '777 patent (a reissue of the '462) asserted here are not material to the

instant motion to dismiss. For the same reasons discussed therein, Realtime has sufficiently plead

infringement of the '777 and '298 patents to put Samsung on notice of what it must defend.

**C.     Realtime's Allegations Regarding Induced and Contributory
Infringement Are Properly Limited to Conduct Occurring After
Samsung Gained Knowledge of the Patents**

Samsung's only complaint with respect to the indirect infringement allegations is that

they do not allege pre-suit knowledge but rather state that Samsung has indirectly infringed "at

least since the filing of this action." (Mot. at 8.) However, Samsung cites no case supporting its

position that this language is improper or requires dismissal.

The *Corydoras* case cited by Samsung simply holds that "a patentee cannot recover on

claims of indirect infringement for acts occurring prior to the accused infringer having

knowledge of the asserted patents." *Corydoras Techs., LLC v. Apple Inc.*, No. 2:16-CV-00538-

JRG, 2016 WL 9242435, at *2 (E.D. Tex. Nov. 23, 2016). The court did *not* impose a

requirement that a complaint must expressly plead that indirect infringement claims are limited

to post-filing conduct in the absence of an allegation of pre-suit knowledge. *See id.*

Realtime's Amended Complaint is in line with this holding. The indirect infringement

allegations do not purport to recover for acts occurring prior to Samsung having knowledge of

the asserted patents. Rather, they simply state that Samsung's indirect infringement started at

least as early as the filing of this action. The allegations are properly limited to conduct occurring

9

after Samsung gained knowledge of the asserted patents. Samsung's motion to dismiss should be denied.

### D.    The Amended Complaint Sufficiently Pleads Contributory Infringement

Samsung's argument that Realtime has not sufficiently plead that the accused products have no substantial non-infringing use fails. Each count of the Amended Complaint specifically alleges: "Samsung knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the [asserted patents], not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the hardware and software in Accused Instrumentalities perform the compression functionalities described above, and Accused Instrumentalities used in ordinary and customary manner infringes the patent, as set forth in the above limitation-by-limitation analysis above." Dkt. No. 26 ¶¶ 31, 49, 67, 86, 103, 125, 143.

Courts in this and other districts have consistently held that the level of detail in the foregoing allegations is more than sufficient to state a claim for contributory infringement. For example, in *Uniloc USA, Inc. v. Motorola Mobility LLC*, No. 2:16-CV-989-JRG, 2017 WL 3721064 (E.D. Tex. May 15, 2017), this Court held that a simple allegation that the accused product is "not a staple article or commodity of commerce suitable for substantial non-infringing use" was sufficient under *Twombly* and denied the defendant's motion to dismiss. *Id.* at *5. In rejecting the defendant's argument that the complaint "stated only threadbare, recitals that the accused products have no substantial non-infringing use," the court found that the allegations, "if true, are sufficient to 'raise a reasonable expectation that discovery will reveal' [defendants] are liable for the misconduct alleged." *Id.* The court further noted that "[i]t may very well be the case that the accused software module is not a material part of the infringing process and does, in fact,

have a substantial non-infringing use, but "it is not the province of the Court to resolve these factual disputes at this early juncture." *Id.*

Likewise, in *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-CV-507, 2015 WL 10936121, at *6 (E.D. Tex. Oct. 30, 2015), the court held that "[i]t is sufficient at the pleading stage, for the Plaintiff to specify the component and allege that it is a material part of the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use." *Id.* at *6 (citing *Tierra Intelectual Borinquen, Inc. v. Toshiba Am. Info. Sys., Inc.*, No. 2:13-CV-047-JRG, 2014 WL 605431, at *2 (E.D. Tex. Feb. 14, 2014)). Here, Realtime has done just that. "Taking the facts alleged as true, [Realtime] has adequately pled that the accused components have no substantial noninfringing uses." *Id.*; *see also Rhodes Pharm. L.P. v. Indivior, Inc.*, No. CV 16-1308, 2018 WL 326405, at *9 (D. Del. Jan. 8, 2018) ("A simple allegation that the product at issue is not suitable for substantial non-infringing use is generally sufficient to satisfy the pleading requirements of *Twombly* and *Iqbal*."); *Conair Corp. v. Jarden Corp.*, No. 13-CV-6702 AJN, 2014 WL 3955172, at *4 (S.D.N.Y. Aug. 12, 2014) (same); *EZ STAK, LLC v. Dejana Truck & Util. Equip. Co.*, LLC, No. 17 C 8742, 2018 WL 2933603, at *4 (N.D. Ill. June 12, 2018) (same).

Samsung's reliance on *In re Bill of Lading* as purported support for its argument that Realtime is required to provide a detailed explanation of "how" the accused products have no substantial non-infringing use" (Mot. at 9–10) is misplaced. Indeed, courts have consistently rejected this very argument in light of "the obvious difficulty plaintiffs would face in pleading a negative without the benefit of discovery." *Puget Bioventures, LLC v. Biomet Orthopedics LLC*, No. 3:10-CV-465 JD, 2018 WL 3223152, at *5 (N.D. Ind. July 2, 2018). *In re Bill of Lading* does not require plaintiffs "to plead a null set under the plausibility standard of *Iqbal* and

*Twombly*." *Id.* "To hold otherwise would be to require [plaintiff] to plead with specificity something that allegedly does not exist." *Id.*; *see also Driessen v. Sony Music Entm't*, No. 2:09-CV-0140-CW, 2013 WL 4501063, at *1 (D. Utah Aug. 22, 2013) ("Not only is it logically impossible to describe in detail that which does not exist, a 'null set pleading requirement' also is a misinterpretation of Section 271(c)."); *Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 688 (E.D.N.Y. 2017) (noting that "[w]hile [plaintiff's allegation that the accused products have no substantial non-infringing use] seems conclusory, many courts post-*Iqbal* have not demanded detailed factual allegations that the defendants' products lack substantial noninfringing uses"); *Conair*, 2014 WL 3955172, at *4 (noting "the difficulty of alleging enough facts to demonstrate a negative at this stage, and that "[f]or this reason, numerous post-*Iqbal* cases have not required detailed factual allegations in support of a plaintiff's claim that a defendant's product lacks substantial noninfringing uses" (collecting cases)).

*In re Bill of Lading* is also factually distinguishable. In that case, the Federal Circuit emphasized that "the district court did ***not*** conclude that the allegations of contributory infringement lacked sufficient detail to satisfy the specificity requirement of *Twombly* and *Iqbal*." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (emphasis added). Rather, the reason the contributory infringement allegations were deemed insufficient is because the plaintiff had alleged facts showing that the defendant's product could be used in substantial noninfringing ways. The court thus found that "affirmative allegations of fact in the amended complaints defeated any claim of contributory infringement." *Id.* at 1337. "In other words, the plaintiff itself had alleged facts showing that the defendant's product could be used in substantial noninfringing ways." *Conair*, 2014 WL 3955172, at *4 (citing *In re Bill of Lading*, 681 F.3d at 1339). Here, by contrast, Realtime does not allege any

facts (nor does Samsung identify any) that contradict its allegations that Samsung's products lack substantial noninfringing uses.[5]

The Federal Circuit's recent holding in *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018) further confirms that there is no requirement that a complaint explain "how" the accused products have no substantial non-infringing use, as Samsung contends. There, the court found that an allegation that the accused product "have no substantial noninfringing uses" was sufficient and reversed the district court's dismissal of the contributory infringement claims. *Id.* at 1357. The court further noted that it "must presume these allegations are true at the pleading stage," and "[t]o the extent Defendants dispute these allegations, this is a factual inquiry not suitable for resolution on a motion to dismiss." *Id.*

Samsung's argument that the hardware and software of the accused products "clearly have substantial noninfringing uses" (Mot. at 10) also fails. This argument mischaracterizes Realtime's allegations and improperly isolates individual components of the accused *system*. Realtime's allegations make clear that there is no substantial noninfringing use for the combination of hardware and software components described in the Amended Complaint. And regardless, Samsung's assertions merely amount to a dispute as to the merits of Realtime's infringement claims, which is improper on a motion to dismiss. Accepting the allegations of the Amended Complaint as true, and drawing all reasonable inferences in Realtime's favor, Realtime

---

[5] *See also MyMedicalRecords, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020, 1029 (C.D. Cal. 2014) (distinguishing the case before it from *In re Bill of Lading* and denying motion to dismiss contributory infringement claims, as "the 'affirmative allegations' themselves do not establish [the accused product's] purported noninfringing uses"; "[Defendant] therefore finds little support in *In re Bill of Lading*"); *EZ STAK*, 2018 WL 2933603, at *4 (denying motion to dismiss contributory infringement claims because "[u]nlike in *Bill of Lading*, [plaintiff's] complaint does not 'actually make clear on [its] face that [plaintiff's] products do have substantial non-infringing uses"); *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 311 F. Supp. 3d 1078, 1082 (D. Minn. 2018) (distinguishing case from *In re Bill of Lading* and denying motion to dismiss contributory infringement claims where the complaint alleged "unconditionally that the accused product has no substantial non-infringing uses" and did not contain facts contradicting such allegation).

has adequately pled that the accused products have no substantial noninfringing uses. Contrary to Samsung's assertions, Realtime is not required to prove its case at the pleading stage. *See Uniloc*, 2017 WL 3721064, at *5 ("While "[i]t may very well be the case that the accused software module is not a material part of the infringing process and does, in fact, have a substantial non-infringing use," "it is not the province of the Court to resolve these factual disputes at this early juncture."); *Nalco*, 883 F.3d at 1357 ("We must presume these allegations [that the accused products have no substantial noninfringing uses] are true at the pleading stage. To the extent Defendants dispute these allegations, this is a factual inquiry not suitable for resolution on a motion to dismiss.").

## III.    CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Realtime's opposition and sur-reply to the motion to dismiss in the *Cisco* action (Case No. 17-cv-591-JRG, Dkt. Nos. 44 & 50), Samsung's motion to dismiss should be denied.

Dated:  August 28, 2018                    Respectfully submitted,


                                           By: /s/ C. Jay Chung
                                           Marc A. Fenster (CA SBN 181067)
                                           Email: mfenster@raklaw.com
                                           Brian D. Ledahl (CA SBN 186579)
                                           Email: bledahl@raklaw.com
                                           Reza Mirzaie (CA SBN 246953)
                                           Email: rmirzaie@raklaw.com
                                           Paul Kroeger (CA SBN 229074)
                                           Email: pkroeger@raklaw.com
                                           C. Jay Chung (CA SBN 252794)
                                           Email: jchung@raklaw.com
                                           Philip X. Wang (CA SBN 262239)
                                           Email: pwang@raklaw.com
                                           Christian Conkle (CA SB No. 306374)
                                           Email: cconkle@raklaw.com
                                           **RUSS AUGUST & KABAT**
                                           12424 Wilshire Boulevard, 12th Floor
                                           Los Angeles, CA 90025
                                           Telephone: 310/826-7474
                                           Facsimile 310/826-6991

                                           T. John Ward, Jr.
                                           Texas State Bar No. 00794818
                                           E-mail: jw@wsfirm.com
                                           Claire Abernathy Henry
                                           Texas State Bar No. 24053063
                                           E-mail: claire@wsfirm.com
                                           Andrea Fair
                                           State Bar No. 24078488
                                           E-mail: Andrea@wsfirm.com
                                           **Ward, Smith & Hill, PLLC**
                                           PO Box 1231
                                           Longview, Texas 75606-1231
                                           (903) 757-6400 (telephone)
                                           (903) 757-2323 (facsimile)

                                           **Attorneys for Plaintiff**
                                           **REALTIME ADAPTIVE STREAMING**
                                           **LLC**

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2018, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

<u>/s/ C. Jay Chung</u>